IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:17CR30 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | |
| CARLTON H. NUNN, | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by its counsel, David A. Sierleja, Acting United States Attorney, and Megan R. Miller, Assistant United States Attorney, and respectfully submits this memorandum setting forth the United States' position regarding the sentencing for Defendant Carlton H. Nunn. For the reasons set forth below and those to be articulated at the sentencing hearing, the United States respectfully submits that a sentence within the applicable Guidelines range set forth in the Presentence Investigation Report ("PSR") is appropriate in this case.

I.  **FACTUAL BACKGROUND**

To support its sentencing position, the United States offers the following summary of Defendant Nunn's conduct. The United States also refers the Court to the description included in the PSR. (R. 17: PSR, PageID 97-99).

In September 2016, Defendant Carlton Nunn, accompanied by J.B. and S.B., went to the Medina County Gun Show twice over the course of one weekend. (*Id.*, PageID 97). According to Nunn, S.B. and J.B. drove. (*Id.*, PageID 98). While at the show, Nunn purchased a total of 24 firearms from four different federally licensed firearms dealers. (*Id.*). All of the guns that Nunn purchased were .9mm pistols similar in make and model. (*Id.*, PageID 98-99).

In connection with the purchase of these 24 guns, Nunn completed five ATF Forms 4473, which federal firearms licensees are required to maintain for all firearms purchases. Nunn indicated on each form that he was the actual transferee/buyer of the firearms when in fact he was not. (*Id.*, PageID 98). Indeed, S.B. and J.B. appeared to select the firearms and provide Nunn with the purchase money for them. (*Id.*, PageID 97). Nunn also used a ruse while purchasing from at least one FFL, informing the FFL that he instructed concealed carry classes and that the firearms were for use in his class. (*Id.*, PageID 98). Nunn paid for the firearms, valued at over several thousand dollars, in cash. (*Id.*).

In a subsequent interview with ATF agents, Nunn admitted that he purchased approximately 15 firearms over several weeks at both the Medina and Summit County Gun Shows.[1] Nunn admitted that he paid for the guns but did not use his own money. (*Id.*, PageID 97-98). He also indicated that he left the guns in the trunk of J.B. and S.B.'s car and never saw the firearms again. (*Id.*, PageID 98). Nunn stated that he grew up with J.B. and has known him for 30 years. (*Id.*). He also knew that J.B. had been in prison. (*Id.*).

---

[1] Although Nunn was not charged in connection with the purchase of firearms from the Summit County Gun Show, Nunn admitted to ATF agents that he in fact purchased firearms from that show. (R. 17: PSR, PageID 97). Additionally, ATF agents received information that a black female and two black males matching the descriptions of Nunn, J.B., and S.B. bought numerous firearms at the Summit County Show. (*Id.*).

## II. APPLICABLE LEGAL STANDARDS

A well-established legal framework guides the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Collington*, 461 F.3d 805, 807 (6th Cir. 2006). The Guidelines thus remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal citation omitted). After determining the appropriate Guidelines range, the Court then turns to the familiar factors set forth in 18 U.S.C. § 3553(a).

## III. SENTENCING GUIDELINES COMPUTATION

The United States concurs with the Guidelines calculation outlined in the PSR. (R. 17: PSR, PageID 100). Nunn's base offense level is 14 under U.S.S.G. § 2K2.1(a)(6) because Defendant was convicted under 18 U.S.C. § 922(a)(6) and committed the offense with knowledge that he would transfer the firearms to a prohibited person. (*Id.*) The United States also agrees that a four-level enhancement applies under U.S.S.G. § 2K2.1(b)(1)(B) because Nunn purchased 24 firearms. (*Id.*). An additional four-level enhancement applies under U.S.S.G. § 2K2.1(b)(5) because Nunn trafficked in firearms. (*Id.*). Following a three-level reduction for acceptance of responsibility, Nunn's total offense level is 19 under Guideline § 2K2.1. (*Id.*). Nunn falls into Criminal History Category I. (*Id.*, PageID 102). The corresponding Guidelines range is 30 to 37 months. (*Id.*).

### IV. APPLICATION OF § 3553(a) FACTORS

#### A. NATURE AND CIRCUMSTANCES OF OFFENSE

The nature and circumstances of the offense counsel in favor of a sentence within the applicable Guidelines range set forth in the PSR.  Over the course of two days, Nunn purchased 24 .9mm pistols from a Medina County Gun show.  In connection with these transactions, Nunn made false statements on five separate ATF Forms 4473, swearing under penalty of law that he was the actual buyer of the firearms when he knew that he intended to resell them to J.B., a prohibited person.  Nunn's intentional disregard for the law, standing alone, is sufficient to support a sentence within the applicable guidelines range.

The number of firearms at issue and the circumstances surrounding Nunn's purchases, however, magnify the severity of the offense and further support a guidelines sentence.  Nunn did not just purchase and transfer one or two firearms; he bought and sold 24.  These firearms were all .9mm pistols, which are one of the more common guns for criminal use.  Nunn did not use his own money to purchase the firearms but rather received money from J.B. and/or S.B. to make the purchases.  Nunn, knowing that his lifelong friend J.B. had been in prison, then simply left the firearms in the trunk of their car.  As evidenced by the fact that one of the firearms was recovered at a crime scene in Canada mere months after Nunn purchased it—Nunn transferred the guns without regard for their intended use or the type of individual that would ultimately possess them.  In so doing, Nunn's conduct jeopardized—and continues to jeopardize—the safety of the community by increasing the number of firearms potentially available for illegal activity.  Given these aggravating circumstances, a sentence within the applicable guidelines range is appropriate.

   B. <u>HISTORY AND CHARACTERISTICS OF THE DEFENDANT</u>

Although Nunn has no prior felony convictions, it is precisely his limited criminal history that enabled him to carry out the instant offense.  Knowing that J.B. could not purchase his own firearms due to his prohibited status, Nunn agreed or was enlisted to purchase 24 firearms for him.  Under these circumstances, Nunn's limited criminal history should not be used a basis to vary below the applicable guidelines range.

   C. <u>NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, TO PROVIDE JUST PUNISHMENT, AND TO AFFORD ADEQUATE DETERRENCE</u>

A Guidelines sentence also will adequately reflect the severity of the offense, promote respect for the law, and provide adequate deterrence for Nunn and others contemplating similar crimes.  The offense conduct and other relevant factors fall within the scope of circumstances contemplated by the Guidelines, and a Guideline sentence will accomplish the goals of 18 U.S.C. § 3553(a).

## V. CONCLUSION

For these reasons and those to be articulated at the sentencing hearing, the United States respectfully requests that the Court impose a term of imprisonment within the applicable Guidelines range set forth in the PSR.

        Respectfully submitted,

        DAVID A. SIERLEJA
        Acting United States Attorney

By:   /s/ Megan R. Miller
        Megan R. Miller (OH: 0085522)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3855
        (216) 522-8355 (facsimile)
        Megan.R.Miller@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 3rd day of July 2017 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                                      /s/ Megan R. Miller
                                                      Megan R. Miller
                                                      Assistant U.S. Attorney